**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                        No. 95-5770

JOHN MICHAEL WILLIAMS,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-95-206-A)

Argued: September 24, 1996

Decided: February 14, 1997

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

_____

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Judge Russell and Judge Hall joined.

_____

**COUNSEL**

**ARGUED:** Michael Andrew Dawson, COVINGTON & BURLING,
Washington, D.C., for Appellant. Thomas More Hollenhorst, Assis-
tant United States Attorney, Alexandria, Virginia, for Appellee. **ON
BRIEF:** Robert A. Long, Jr., COVINGTON & BURLING, Washing-
ton, D.C., for Appellant. Helen F. Fahey, United States Attorney,
Alexandria, Virginia, for Appellee.

_____

**OPINION**

WIDENER, Circuit Judge:

John M. Williams was indicted April 27, 1995 on three counts of distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1). After a one-day trial on June 27, 1995, the jury convicted Williams of all three charges. The district court then sentenced Williams to a prison term of 121 months. Williams now appeals his convictions on several grounds. We affirm.

I.

Factual Background

In August 1994, Michael Angel, a confidential informant, agreed to make recorded telephone calls for the purpose of purchasing methamphetamine from Williams. Angel eventually made three such calls for the government. During the first call, Angel stated that he would "shoot" the defendant $400. Shortly thereafter, the informant and an agent from the Northern Virginia Drug Enforcement Administration Task Force shipped an express mail package containing $400. The package was addressed to "John Williams, 2515 Sonoma Ave., Torrance, California 90503," with a return address of "P.O. Box 164, Merrifield, Virginia 22116." Later, a Task Force agent retrieved a package from Post Office Box 164 containing a computer disk and 9.187 grams of methamphetamine.

Angel then placed another recorded call to Williams. Williams asked Angel if he had gotten "it." Angel responded that he had and that he would probably "double." A few days later, Angel and a Task Force agent sent an envelope containing $800 in cash to the defendant for a controlled delivery. A second package addressed to Angel was subsequently retrieved from the Merrifield post office box. It contained a computer disk and 15.15 grams of methamphetamine, which was 10 to 12 grams less than Angel had expected.

That same day, Angel placed a third recorded call to Williams to inform him that the recent shipment was short. Another envelope

eventually arrived. Inside was an Auto Parts Club newspaper and 3.145 grams of methamphetamine.

Angel died on November 1, 1994. In January 1995, after Angel's death, a Task Force agent tried to purchase additional methamphetamine from the defendant. His attempts failed. On January 19, 1995, the DEA executed a search warrant on Williams' home. Seized items included a triple beam scale, a pocket scale with residue similar to methamphetamine, a baggie of suspected methamphetamine, and an address book listing an address for Mike Angel in handwriting matching that on the envelope sent to the Merrifield post office box.

II.

Constructive Amendment of Indictment

Williams' first contention on appeal is that the prosecutor constructively amended the indictment at trial by arguing that the defendant's admitted distribution of marijuana constituted an admission of guilt to the charged offenses--distribution of methamphetamine. This situation arose after Williams took the stand and testified that he had distributed marijuana, but not methamphetamine, to Angel. In closing argument, the prosecutor made several references to this admission, stating that the defendant had admitted guilt to the indictment's first two counts.[1] These counts related to the first two shipments of methamphetamine.

_____

[1] The prosecutor made the following statements during closing arguments:

> So even though the Government has alleged a distribution of methamphetamine, and even if you believe the defendant, he has just admitted his guilt to two of the counts in the indictment, Count 1 and Count 2.
>
> He has admitted that he has received drug money. He has admitted that he has sent drugs through the mails on or about those dates. It is not important that the defendant knew the nature of the drug or the quantity of the drug. He has, in essence, judicially admitted his guilt to Counts 1 and 2.
>
> . . . .

3

Williams charges that the prosecutor's comments amounted to a constructive amendment of the indictment from distributing methamphetamine to distributing marijuana. He bases this claim on our decision in United States v. Floresca, 38 F.3d 706 (4th Cir. 1994) (en banc). There, we held that "[a] constructive amendment to an indictment occurs when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury." Floresca, 38 F.3d at 710. Such a constructive amendment would violate the grand jury clause of the Fifth Amendment. Williams suggests that the prosecutor's improper statements in closing argument, coupled with the prosecutor's extensive development of Williams' admitted marijuana distribution on cross-examination, broadened the possible bases of conviction to include distribution of marijuana.

The actions complained of here occurred wholly within the context of closing argument. It is doubtful at best if any error occurred under Floresca in this case.[2] Even more importantly, however, there was no

_____

He's [the defendant is] desperate. He's come up with a recent fabrication to somehow explain this away. He does it in a not very clever way, that is he's admitted to Counts 1 and 2 essentially.

. . . .

The Government has proven its case, and, in fact, the defendant has really admitted to at least two of the counts of the case.

[2] The district court's clear and unambiguous instructions to the jury eliminated any further concern we might have on this issue. The district court instructed in its opening charge that the lawyers' statements throughout the trial are not evidence and that the jury "must always keep that in mind." In its final charge, the court instructed that whenever a disparity appears to the jury between the law as stated by the attorneys and the law as stated by the court in its instructions, the instructions govern. The court then reiterated that counsels' statements, objections, and arguments were not evidence. The court further instructed that the government must show that the defendant knowingly and intentionally distributed the controlled substances described in the indictment. The court added that the government had the burden of proving beyond a reasonable doubt that the defendant distributed a mixture and substance containing methamphetamine.

contemporaneous objection to the prosecutor's statements and no motion for a mistrial. In such circumstances, we will not entertain the question on appeal. United States v. Rhodes, 779 F.2d 1019, 1030 (4th Cir. 1985). In all events, we are of opinion there was no plain error under United States v. Olano, 507 U.S. 725 (1993).

III.

Ineffective Assistance of Counsel

Williams next asserts that his defense counsel's closing argument constituted ineffective assistance of counsel. For Williams to succeed on this claim on direct appeal, the record must demonstrate conclusively that defense counsel did not provide effective representation. United States v. Smith, 62 F.3d 641, 651 (4th Cir. 1995). It must appear that the performance of Williams' counsel fell below an objective standard of reasonableness and that the deficient performance was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington , 466 U.S. 668, 687-88 (1984). We believe Williams has failed to make these showings.

Williams points to two sentences in his counsel's closing argument as undermining his defense. Defense counsel stated,"I would tell you what John Williams says happened isn't what happened. It's the stupidest story I have ever heard." The defendant, however, has divorced this language from the context in which it was spoken.[3] Although the meaning of counsel's statements may not be entirely clear, he obviously was arguing that Williams' story was so preposterous (in that his testimony admitted to committing a crime) that in

_____

[3] In its entirety, the paragraph in which defense counsel made these statements is as follows:

> I would tell you what John Williams says happened isn't what happened. It's the stupidest story I have ever heard. I am not vouching for the credibility of John Williams. And Mr. Hollenhorst [the prosecutor] doesn't vouch for the credibility of his witnesses. But I think it's a pretty bitter pill to swallow to get up on the witness stand and say, Yes, I mailed marijuana. I mailed drugs to Mike Angel. That's what I did. And I got money in return, but I didn't mail methamphetamine.

5

fact he is most likely telling the truth. Rather than disparaging his client's unusual defense (that Williams is not guilty of the charged offense because the drug he sent was not methamphetamine), he was trying to make what little sense could be made of it for the jury to buttress Williams' credibility. This became more apparent later in counsel's argument when he asserted that Williams' testimony should create a reasonable doubt as to whether the defendant mailed methamphetamine or marijuana to Angel and when he requested the jury to set aside "the fact that he sent marijuana to Mike Angel" in deciding whether Williams did the act charged in the indictment.

Although defense counsel might have worded his argument more carefully, he was putting the best slant he could on his client's peculiar testimony. Thus, we are of opinion that the record fails to demonstrate that defense counsel's actions fell below an objective standard of reasonableness, much less deprived the defendant of a fair trial.

IV.

Admission of Out-of-Court Statement

Williams' challenge to the district court's admission of an out-of-court statement by Angel is equally unavailing. During re-direct examination of the Task Force agent who worked most closely with Angel, the prosecutor asked, "And did he [Angel] say whether or not he had ever obtained methamphetamine from the defendant?" The defense objected to this question on hearsay grounds. The court overruled the objection on the ground that the defendant had "opened the door." The Task Force agent then responded that Angel told him that he had made "multiple purchases from John Williams, both personally and through the mail."[4]

We agree with the district court that the defendant opened the door to this line of questioning and therefore find that the court did not

_____

[4] Without objection, the government next asked whether Angel provided the modus operandi for obtaining drugs from the defendant. The agent answered that when Angel was in California he would go to the defendant's residence where he would obtain drugs from him, and when going through the mail, "it was basically the way that I conducted it."

6

abuse its discretion in admitting the out-of-court statement. In cross-examining the Task Force agent, defense counsel elicited testimony that the agent had no "personal knowledge" as to any dealings between Williams and Angel over the last four years. He also asked the agent if he had any "personal knowledge" of business dealings between the defendant and Angel for which Angel might have owed the defendant money. The agent responded that he did not.

Although the defendant now emphasizes the use of the term "personal" knowledge regarding Angel and Williams' relationship, the term has not been before defined. The phrase can imply either first or secondhand knowledge, as the district court obviously found it, and the agent apparently interpreted defense counsel's questions as inquiring into his firsthand knowledge only. His answers thus had the potential to mislead the jury into thinking the agent had no knowledge regarding Angel's dealings with Williams. The district court therefore permitted the prosecution to introduce Angel's out-of-court statement to close the door opened by the defense.

V.

Warrantless Search

Williams next argues that the district court's admission into evidence of the envelopes containing methamphetamine was plain error because the investigating agents opened them without a search warrant. Because the defense did not object to the evidence in the district court, we review the court's decision for plain error. Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 731-32 (1993); United States v. Hanno, 21 F.3d 42, 45 (4th Cir. 1994).

We are of opinion that the admission of the contents of the three envelopes did not constitute error at all, much less plain error. Even assuming Williams had standing to challenge the admissibility of the envelopes, the record indicates that Angel's consent was implied from his conduct during the investigation. Angel had the right to open, or give consent to open, the envelopes because they were addressed to him. Also at this time, Angel, as an informant, and the Task Force agents who actually opened the packages were cooperating. Angel had agreed to buy methamphetamine using government money. At

7

Angel's instance, the drugs procured with that money were sent to him at a post office box under the exclusive custody and control of the DEA Task Force. We believe this evidence of the relationship between Angel and the Task Force agents establishes Angel's implied consent. Accordingly, the agents' search of the packages did not violate Williams' constitutional rights as sender of the package. See United States v. Kurck, 552 F.2d 1320, 1321 (8th Cir. 1977) (evidence of cooperative relationship between an informant driver of a car and arresting officers established implied consent to search trunk for counterfeit money and other evidence while defendant was passenger in informant's automobile).

VI.

Sufficiency of Evidence

Williams' final contention on appeal is that the evidence was insufficient to convict him. In reviewing sufficiency claims on direct appeal, our inquiry is whether there is substantial evidence taking the view most favorable to the government to support the conviction. Glasser v. United States, 315 U.S. 60, 80 (1942).

After reviewing the record, we find that Williams' sufficiency challenge is without merit. The government proved that its informant had called Williams and sent Williams money three times. Each time, a package followed, in accordance with the terms of the conversations. All three shipments contained methamphetamine. The government also demonstrated that Williams himself signed for envelopes containing the money to pay for the goods discussed in the first two telephone calls. All three packages of methamphetamine were addressed in a handwriting that matched handwriting in an address book found in Williams' residence. The third envelope also contained an Auto Parts Club newspaper in addition to the methamphetamine, and Williams is an auto mechanic.

During a search of Williams' residence, the government seized evidence including a triple beam scale, a pocket scale with residue similar to methamphetamine, and a baggie of methamphetamine.[5]

_____

[5] The defendant admitted that the substance in the baggie was methamphetamine, but denied it belonged to him.

8

Drawing all favorable inferences from this evidence, we conclude that it supports Williams' conviction on the indictment's three counts. We therefore reject Williams' sufficiency challenge.

The judgment of the district court is accordingly

<u>AFFIRMED</u>.

9