**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                              No. 97-4587

DANIEL JOSEPH BRENNAN,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Herbert N. Maletz, Senior Judge, sitting by designation.
(CR-96-340)

Submitted: August 25, 1998

Decided: September 24, 1998

Before ERVIN, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Randolph Stuart Sergent, VENABLE, BAETJER & HOWARD,
L.L.P., Baltimore, Maryland, for Appellant. Lynne A. Battaglia,
United States Attorney, Maury S. Epner, Assistant United States
Attorney, Greenbelt, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Daniel Joseph Brennan was convicted by a jury of attempted bank robbery in violation of 18 U.S.C. § 2113(a) (1994), and soliciting others to commit an armed robbery of an armored car in violation of 18 U.S.C. § 373(a) (1994). The district court sentenced Brennan to thirty-seven months' imprisonment. Brennan now appeals both his conviction and sentence. However, finding no error, we affirm.

Federal authorities began their investigation of Brennan after Stephen Passero, Brennan's godson, informed them that Brennan solicited his help in a plan to rob an armored car. According to Passero, the plan actually involved two robberies: (1) a preliminary robbery of a commercial establishment, which Brennan claimed would finance the purchase of bulletproof vests, walkie talkies, scanners, and guns and (2) the armored car robbery. Passero also informed authorities Brennan advocated enlistment of a third party for help in these robberies.

Based on this information, FBI agent Alan Carrol arranged with Passero to be recommended to Brennan for this third position in the "conspiracy." In addition, Carrol communicated through Passero his suggestion of a subject for the preliminary robbery: a bank in New Carrolton, Maryland. Brennan eventually accepted both Carrol and his suggestion, and the three men agreed to rob the bank. Thereafter, Brennan, Carrol, and Passero "cased" both the bank and armored car locations and stole a car for use in robbing the bank.

However, before the robbery of the bank could be carried out, FBI agents arrested Brennan. Following his arrest, Brennan confessed to his role in both the initial steps of the robbery of the bank and in the plan to rob the armored car. As a result of this confession, Brennan was indicted for attempting the robbery of the bank and for soliciting others to aid in the robbery of the armored car.

During trial in the district court, there were two occurrences relevant to this appeal. First, during direct examination by the Govern-

2

ment, Passero testified about an alleged "falling out" between himself and Brennan. According to the Government, this testimony was elicited in order to establish Passero's motive in collaborating with the FBI,[1] and the record indicates that no details of this "falling out" were sought. However, on cross-examination, Brennan's counsel asked Passero about an affidavit Passero signed stating that an attack by Brennan, allegedly the cause of this "falling out," never occurred. Therefore, on redirect examination, the Government asked Passero about details of the attack, which Passero provided, going so far as to point out the place on his body where he was allegedly shot by Brennan.

Second, at the close of trial, the district court denied Brennan's request for a jury instruction on entrapment. The court based this decision on its determination that Brennan had not produced evidence sufficient to warrant such an instruction.

Brennan was found guilty of both charges contained in the indictment against him, and the district court sentenced him to thirty-seven months' imprisonment. In so doing, the district court denied Brennan's request for a downward departure under the Sentencing Guidelines for physical impairment. This appeal followed.

In this appeal, Brennan alleges three errors by the district court: two regarding trial and one regarding sentencing. We consider each in turn.

First, Brennan argues that the court erred in allowing Passero to describe Brennan's alleged attack on him and to point out the location of the wound he allegedly received in that attack. Brennan contends that this evidence was irrelevant, prejudicial, and not admissible under the Federal Rules of Evidence. The Government concedes that, standing alone, the testimony is not admissible under the Rules,[2] but argues that it was nevertheless properly admitted because Brennan "opened the door" to the question of whether he attacked Passero. We agree.

_____

**1** <u>See</u> Appellee's Br. at 22.

**2** <u>Id.</u>

3

In determining whether Brennan's counsel's cross-examination of Passero "opened the door" to the Government's questions regarding the details of the alleged attack, we find our holding in <u>United States v. Barber</u> instructive.[3] In <u>Barber</u>, a criminal defendant testified on direct examination that "had he been afforded the opportunity," he would have given a statement to prosecutors regarding the charges against him before he was indicted.[4] As a result of this testimony, we held that the defendant "opened the door" to cross-examination by the Government on the subject of the defendant's exercise of his Fifth Amendment privilege against self-incrimination before the grand jury --a matter indisputably off-limits to prosecutors in all but exceptional circumstances.[5]

Further, we are mindful of our more recent holding in <u>United States v. Williams</u>.[6] In that case, counsel for a defendant charged with distributing drugs cross-examined a DEA agent as to whether the agent had "personal knowledge" of the defendant's dealings with an informant.[7] We held that this "opened the door" to a redirect question regarding the informant's out-of-court statement that he had purchased drugs from the defendant.

In the instant case, we are satisfied that defense counsel's questions about the affidavit regarding the alleged attack "opened the door" to Passero's testimony. As in <u>Barber</u>, the Government avoided detailed inquiry into the inadmissible evidence[8] until Brennan's counsel put the subject of that evidence--whether an attack actually occurred--at issue through detailed questions about the facts upon which the affidavit was based.[9] Thereafter, the sort of clarification-oriented redirect

---

[3] 668 F.2d 778 (4th Cir. 1982).
[4] <u>**United States v. Barber**</u>, 668 F.2d 778, 785 (4th Cir. 1982).
[5] <u>**See id.**</u>
[6] 106 F.3d 1173 (4th Cir.), <u>cert. denied</u>, ___ U.S. ___, 66 U.S.L.W. 3257 (U.S. Oct. 6, 1997) (No. 96-9412).
[7] <u>**See id.**</u> at 1177.
[8] <u>**See**</u> J.A. at 23 (in examining Passero, the Government asked, "[w]ithout getting into specifics, Mr. Passero what happened to change that relationship [with Brennan])?"
[9] <u>**Id.**</u> at 97-99.

4

allowed in Williams was proper. Thus, we find no abuse of discretion in the district court's decision to admit this testimony. Accordingly, we decline to disturb Brennan's conviction on this ground.

We are also unpersuaded by Brennan's contention that the district court erred in denying his request for a jury instruction on entrapment. As we explained in United States v. Singh,[10] "[i]n order to receive an entrapment defense instruction, the defendant must produce `sufficient evidence from which a reasonable jury could find' that the government induced him to commit the charged offense."[11] After a de novo review of this issue,[12] we agree with the district court's determination that Brennan failed to produce such evidence.

The affirmative defense of entrapment has two elements: (1) government inducement of the crime and (2) lack of predisposition on the part of the defendant to engage in the criminal conduct.[13] Thus, to receive an entrapment instruction, a defendant must come forward with evidence from which a reasonable jury could conclude that both inducement by the Government and lack of predisposition on the part of the defendant existed in a particular case. Here, the district court based its denial of Brennan's request for an entrapment instruction on Brennan's failure to come forward with evidence of a lack of predisposition to rob the bank.[14] We agree.

Brennan argues that he made the decision to rob the bank only after Carrol suggested it. This, Brennan contends, demonstrates that he was not disposed to rob a bank until after the Government had become involved. However, in making this argument, Brennan overlooks the uncontroverted evidence that he was planning some type of robbery to precede the robbery of the armored car well before Passero informed the Government of the plan. Indeed, this was part of the

_____

10 54 F.3d 1182 (4th Cir. 1995).
11 Id. at 1189 (citations omitted).
12 See id.
13 See United States v. Lamarr, 75 F.3d 964, 974 (4th Cir.) (internal quotations and citations omitted), cert. denied , ___ U.S. ___, 65 U.S.L.W. 3309 (U.S. Oct. 21, 1996) (No. 95-9398).
14 See J.A. at 259.

5

information that Passero took to the FBI and was the reason Carrol suggested the bank as a potential target.

In addition, we have held that "inducement" is more than mere suggestion. Rather, it must be "conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party."[15] We find no evidence of such behavior on the part of the Government in this case.

We therefore agree with the district court's determination that Brennan failed to provide evidence sufficient to warrant an entrapment instruction. Accordingly, we will not disturb his conviction on this ground.

Finally, Brennan argues that the district court erred in denying his request for a downward departure under USSG § 5H1.4.[16] Brennan states that this decision was based on the district court's "legal conclusion" that it lacked the authority to make this departure.[17] However, as the Government notes, the district court clearly considered the departure as being within its discretion, but declined to grant it because Brennan's "primary physical problems appear to be chronic alcoholism . . . [and] that the Bureau of Prisons would be and is capable of caring for Mr. Brennan's medical problems."[18]

Thus, we are satisfied that the district court exercised its discretion under § 5H1.4 and that Brennan presents no evidence that it abused that discretion. Accordingly, we affirm the district court's decision to deny the requested downward departure.

Based on the foregoing, we affirm Brennan's conviction and sentence. We deny Brennan's motion to expedite this appeal. We dis-

---

[15] **United States v. Daniel**, 3 F.3d 775, 778 (4th Cir. 1993) (citation omitted).

[16] **U.S. Sentencing Guidelines Manual** (1995).

[17] <u>See</u> Appellant's Br. at 35-36. Brennan contends that the district court determined that it <u>could not</u> make the requested departure because it was of the opinion that Brennan's poor health was the result of alcohol use.

[18] J.A. at 467.

6

pense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED

7