UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-4302

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JAMES EDWARD MILBOURNE,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.   Malcolm J. Howard, District Judge. (CR-03-121-H)

Argued:  February 3, 2005                Decided:  May 11, 2005

Before TRAXLER, GREGORY, and SHEDD, Circuit Judges.

Affirmed by unpublished opinion.  Judge Gregory wrote the opinion. Judge Traxler wrote a separate opinion concurring in the result. Judge Shedd wrote a separate concurring opinion.

**ARGUED:** James Edward Todd, Jr., Research and Writing Specialist, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.   Christine Witcover Dean, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.   **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, G. Alan DuBois, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant.   Frank D. Whitney, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

GREGORY, Circuit Judge:

James Edward Milbourne ("Milbourne") appeals his conviction for possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (Count I); possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count II); and carrying a firearm during and in relation to the drug trafficking crime set forth in Count II, and possession of a firearm in furtherance of that drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count III). On appeal, Milbourne asserts that the Government violated his Fifth Amendment rights by constructively amending the indictment, and challenges the sufficiency of the evidence as to Count III. We affirm his conviction.

I.

On November 16, 2002, several officers from the Raleigh Police Department executed a search warrant at the residence of Milbourne's girlfriend, Katrina Ross ("Ross").[1] When the officers arrived, they made a forced entry into the residence and secured seven adults and two children present in the residence. After searching Milbourne, an officer found a "nickel" or "dime" bag of

---

[1]Milbourne maintained a separate residence but often stayed with his girlfriend.

3

marijuana on his person.[2]  Another officer found a semi-automatic pistol between the mattress and box spring in Ross's bedroom.  The officer questioned Milbourne about the gun.  After verbally waiving his Miranda rights, Milbourne admitted that he had previously purchased the firearm from a man named Zollie Gibson ("Gibson"), also present in the residence at the time of the search.  Milbourne told the officer that he had only used the gun once, after an altercation that took place outside of his residence.  Milbourne had been previously convicted of a felony and his right to possess a gun had not been restored.

The officer also asked Milbourne if he had any contraband in the residence.  Milbourne directed the officer to a jacket in the closet of Ross's bedroom that contained bags amounting to 11.5 grams of marijuana.[3]  Milbourne admitted that he sold "an ounce or two" per week and made about $175 in weekly profit.  During the search, the officers also found two marijuana cigarette butts, some marijuana seeds, and plastic baggies.

---

[2]A "nickel" bag contains one (1) gram of marijuana and a "dime" bag contains two (2) grams.  J.A. 78.

[3]Milbourne stipulated that this was the amount of marijuana in the jacket, J.A. 36, however, as indicated by the Assistant United States Attorney during oral argument, the 11.5 gram calculation represents the combined amount of the marijuana present on Milbourne's person and in the jacket.  The jacket contained approximately 10 grams of marijuana and the remainder was found in a nickel or dime bag on Milbourne's person.

In addition, the officers found an "eight-ball" of crack cocaine in the kitchen.[4] The testimony at trial indicated that Gibson had dropped the cocaine just as the officers entered the residence. Milbourne admitted that Gibson had brought the crack cocaine over for Milbourne to sell, but stated that he had not taken possession of the crack cocaine at the time of the search. Milbourne was not charged with a crime in relation to the crack cocaine and, at trial, an officer stated that the Government did not have enough evidence to charge anyone with the cocaine.

After the search, in an effort to cooperate with the police, Milbourne made a phone call to a drug supplier and ordered an amount of cocaine. The supplier was unable to make a timely delivery and the investigation was terminated.

At trial, Milbourne moved for a judgment of acquittal on Count III, the charge of possession of a firearm in furtherance of the drug trafficking crime of possession with intent to sell marijuana, both at the close of the Government's case and at the close of the evidence. The district court denied both motions. Milbourne then filed a motion for acquittal on Count III, which the district court also denied. The district court sentenced Milbourne to imprisonment for 120 months on Counts I and II to be served concurrently, and to 60 months on Count III to be served

---

[4]The "eight-ball" contained approximately 2.8 grams of cocaine base (crack). J.A. 120-21.

consecutively to the sentences on Counts I and II.  This appeal follows.

## II.

A.    Constructive Amendment of Indictment

Milbourne argues that the Government, in both its presentation of evidence and argument, relied heavily upon evidence of cocaine dealing and of drug dealing in general to establish the nexus between possession of a firearm and drug dealing required by § 924(c).  This, he argues, amounted to a constructive amendment of Count III of the indictment, which charged him with possession of a firearm in furtherance of the specified predicate drug crime of possession with intent to distribute marijuana.  Issues raised for the first time on appeal are subject to plain error review.  Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725 (1993).  However, "constructive amendments of a federal indictment are error per se, and under Olano, must be corrected on appeal even when not preserved by objection."  United States v. Floresca, 38 F.3d 706, 714 (4th Cir. 1994) (en banc).

The Fifth Amendment to the United States Constitution guarantees that a criminal defendant may only be tried on charges alleged in an indictment, and "only the grand jury may broaden or alter the charges in the indictment."  United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999) (internal quotations and

6

citations omitted).  A constructive amendment to an indictment occurs when:  either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instruction to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury.  Floresca, 38 F.3d at 710.  A constructive amendment is a "fatal variance" because the indictment is altered "to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment."  United States v. Schnabel, 939 F.2d 197, 203 (4th Cir. 1991).

Not all differences between an indictment and the proof offered at trial rise to the "fatal" level of a constructive amendment.  Randall, 171 F.3d at 203 (citing United States v. Redd, 161 F.3d 793, 795 (4th Cir. 1998)).  When different evidence is presented at trial but the evidence does not alter the crime charged in the indictment, a "mere variance" occurs.  Id.  A mere variance does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense. Id.

Section 924(c)(1)(A) of Title 18, the offense charged in Count III of Milbourne's indictment, prohibits a person from using or

7

carrying a firearm "during and in relation to a crime of violence or drug trafficking crime," and from possessing a firearm "in furtherance of such crime." 18 U.S.C. § 924(c)(1)(A) (2000). Proof of a predicate offense is an essential element of a § 924(c) violation. <u>Randall</u>, 171 F.3d at 205. The government does not have to charge or convict the defendant of a predicate offense separately, but if it so chooses, "it [is] not allowed through the presentation of its evidence or its argument, and the district court [is] not allowed through its jury instructions, to broaden the bases of conviction to include [a] different § 924(c) predicate offense." <u>Id.</u> at 210.

First, we address whether the district court constructively amended the indictment. The district court's jury instructions on Count III of the indictment were as follows:

> Count Three, carrying a firearm during a drug trafficking crime. Count Three of the indictment charges that on or about November 16, 2002 in the Eastern District of North Carolina, the defendant Mr. Milbourne, also known as Junebug, knowingly carried a Beretta .9-millimeter semiautomatic pistol, during and in relation <u>to a drug trafficking crime for which he may be prosecuted in a court of the United States, as set forth in Count Two</u>, and did possess said firearm in furtherance of such drug trafficking crime, all in violation of Title 18, United States Code, Section 924(c)(1), another federal law.
>
> . . .
>
> For you to find Mr. Milbourne guilty of this crime, you must be convinced that the government has proved each of the following three elements beyond a reasonable doubt.

8

> First, that the defendant committed the crime alleged in Count Two. <u>That is, he possessed with intent to distribute marijuana</u>, and I instruct you that is a drug trafficking crime. In other words, to consider and to deliberate Count Three, the possession of a firearm during or in relation to or furtherance of a drug trafficking crime, you must have already found the defendant guilty of Count Two because <u>if you found the defendant not guilty of Count Two, the drug trafficking crime</u>, you don't consider Count Three. . . .

J.A. 243-44 (emphasis added). Thus, the district court judge specifically instructed the jury that they had to find Milbourne guilty of the drug trafficking crime alleged in Count II to find him guilty on Count III, and that this drug trafficking crime was <u>possession with intent to distribute marijuana</u>. Under this instruction, the district court judge did not broaden the possible bases for conviction beyond that presented to the grand jury.

However, as <u>Floresca</u> notes, the government can also constructively amend the indictment through its presentation of the evidence and/or its argument. 38 F.3d at 710. Thus, we look to the Government's evidence and argument. In the Government's opening statement, it described the discovery of both crack cocaine and marijuana during the search and Milbourne's admission to the police that he had been selling marijuana. J.A. 24-25. In its presentation of the evidence, the Government called Sergeant Craig Haines ("Haines"), who assisted in the search. Regarding drugs, the Government questioned Haines about: finding marijuana on Milbourne's person, <u>id.</u> at 65; the discovery of marijuana in the bedroom in Ross's apartment, <u>id.</u> at 72; the discovery of crack

9

cocaine on the kitchen floor and Milbourne's statement that Gibson brought the crack over for him to sell but that he had not taken possession of it yet, id. at 78; and the failed attempt to have Milbourne make a controlled purchase of cocaine, id. at 80. The Government also called a forensic chemist and questioned her about her testing on the crack cocaine. Id. at 120.

During closing arguments, the Government, while discussing Count III, mentioned crack cocaine several times. First, after extensively discussing its proof on the crime of possession with intent to distribute marijuana, it stated that Gibson, the same man who Milbourne bought the gun from also brought crack cocaine over for Milbourne to sell. Id. at 208-09. Second, when discussing why Gibson had the gun, it stated that the jury could consider the crack cocaine that Gibson brought over for Milbourne to sell. Id. at 209-10. Third, in describing the scene in the house, it noted that Gibson, who had the crack cocaine on his person, threw it down on the kitchen floor when the police arrived. Id. at 210. Finally, in its rebuttal argument, it responded to Milbourne's attorney's question to the jury during his closing argument regarding the Government's motives in mentioning the crack cocaine, by stating that it introduced the crack cocaine because it was probative to show that Milbourne was a drug dealer. Id. at 230.

The Government's references to crack cocaine are not substantial enough to broaden the possible bases of conviction to

10

include possession with intent to sell crack cocaine or another drug trafficking crime involving crack cocaine.[5] The Government's evidence simply showed that a substance, which the forensic chemist concluded was crack cocaine, was discovered in the search. Its opening statement only mentioned that the crack cocaine was discovered during the search.

The only statement that could possibly be argued to broaden the base for conviction occurred during the Government's closing argument when it mentioned in the context of Count III that the jury could consider the crack cocaine that Gibson brought over for Milbourne to sell. This statement could be seen as the Government arguing to the jury that a nexus exists between the gun and selling crack cocaine. However, the fairest reading of that statement in context indicates that the Government was trying to show that Gibson, the man Milbourne bought the gun from, was a drug supplier and the gun was thus intended to be used in conjunction with Milbourne's drug crimes -- selling marijuana.[6] Even if this statement is read as the former, it is not enough to cause the sort

_____

[5]Indeed, testimony was presented that Milbourne never took possession of the crack cocaine and that the Government did not charge Milbourne with a crime relating to the crack cocaine because it did not have enough evidence against him.

[6]Further support for such a reading comes from the Government's subsequent statements in closing: "You can consider that the defendant bought the gun from another drug dealer for $200. Why did he buy that gun from a drug dealer? He couldn't have it. Why did he get it from the drug dealer? It was to further his drug trafficking operation." J.A. 210.

11

of structural defect in the trial mechanism equal to a constructive amendment of the indictment. As noted in <u>United States v. Williams</u>, 106 F.3d 1173 (4th Cir. 1997), a case in which the defendant similarly argued that a constructive amendment of the indictment had occurred, "[t]he actions complained of here occurred wholly within the context of closing argument. It is doubtful at best if any error occurred under <u>Floresca</u> in this case." <u>Id.</u> at 1176.

Here, the Government's closing argument, considered as a whole, clearly indicated to the jury that Count II, possession with intent to distribute marijuana, was the predicate offense that it had to find under § 924(c). Moreover, the district court's instructions explicitly stated as much. Thus, no constructive amendment of the indictment occurred.

B.   <u>Sufficiency of the Evidence</u>

Milbourne contends that the district court erred in denying his motions for judgment of acquittal on the violation of 18 U.S.C. § 924(c), in which he argued that insufficient evidence existed to find beyond a reasonable doubt that he possessed the firearm in furtherance of his possession with intent to deliver marijuana. In reviewing the sufficiency of the evidence, this court must determine whether, construing the evidence in the light most favorable to the government, any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. <u>United</u>

12

States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).  The court

must "allow the government the benefit of all reasonable inferences

from the facts proven to those sought to be established" in making

this determination.  Id.

As discussed, a § 924(c) conviction requires proof beyond a

reasonable doubt that a person: (1) committed a drug crime; and

either (2) used or carried a firearm during and in relation to that

crime; or (3) possessed a firearm in furtherance of that drug

crime.  18 U.S.C. § 924(c)(1)(A) (2000).  The "possession in

furtherance" element is at issue here.[7]  In determining what

evidence is sufficient to establish a violation of § 924(c), the

statutory term "furtherance" should be given its plain meaning of

"'[t]he act of furthering, advancing, or helping forward.'"  United

States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002) (quoting

Webster's II New College Dictionary 454 (1999)).  Therefore, "§

924(c) requires the government to present evidence indicating that

the possession of the firearm furthered, advanced, or helped

forward a drug trafficking crime."  Id.  Whether the firearm served

such a purpose is a question of fact.  Id.

---

[7]Congress added this element to the statute in an apparent
response to the Supreme Court's decision in Bailey v. United
States, 516 U.S. 137 (1995), which had found that possession of a
firearm was insufficient to sustain a conviction under § 924(c)'s
"use" element.  Because the gun was not on Milbourne's person,
"constructive possession" is at issue here.

In Lomax, the court adopted a series of factors set out by the Fifth Circuit in its decision in United States v. Ceballos-Torres, 218 F.3d 409 (5th Cir. 2000), that might lead a fact finder to conclude that a connection existed between a defendant's possession of a firearm and his drug trafficking crime. Lomax, 203 F.3d at 705. These factors include, but are not limited to: "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." Id. (quoting Ceballos-Torres, 218 F.3d at 414-15). Clearly, "mere presence" of a firearm at the scene is not enough to convict. See United States v. Sparrow, 371 F.3d 851, 853 (3d Cir. 2004); United States v. Mackey, 265 F.3d 457, 462 (6th Cir. 2001); Ceballos-Torres, 218 F.3d at 414.

First, looking to the type of drug-activity being conducted, a relatively small amount of marijuana, 11.5 grams, was found in the jacket in Ross's bedroom. Milbourne told the police that he only sold one to two ounces of marijuana per week, a statement not discredited with any testimony at trial. This is a small amount of drugs in relation to other cases in which courts have found a § 924(c) violation. See Lomax, 293 F.3d at 705 (nineteen hits of crack found on defendant's person while he was waiving gun); United

14

<u>States v. Krouse</u>, 370 F.3d 965, 967 (9th Cir. 2004) (86.5 grams of cocaine, 150 lbs. of marijuana); <u>Ceballos-Torres</u>, 218 F.3d at 411 (569.8 grams of cocaine).

Second, looking to the accessibility of the weapon, it was between the mattress and box spring in Ross's bedroom. Thus, while it could be retrieved with little effort, it was not within immediate reach. Third, the gun was Beretta 9 millimeter semiautomatic pistol, which is a common type of gun. Fourth, Milbourne bought the gun from Gibson but no evidence was introduced as to whether it was stolen. Fifth, Milbourne did possess the gun illegally because he had been previously convicted of a felony. Sixth, the gun was loaded.

Seventh, looking to the proximity of the gun to the drugs, the gun was found in the bed and the drugs were found in the pocket of a jacket in the closet. Thus, they were in the same room but not together in the same place or within immediate reach of one another, although they could be picked up together with little effort. Finally, looking to the time and circumstances under which the gun was found, it was found during the execution of the search warrant and not under circumstances indicating that it was in use during the middle of a drug transaction.

After taking these factors into consideration, they do not all point to the gun being used in furtherance of the drug crime. But they also do not dispel the Government's theory that it is

15

reasonable that the gun could have been so used.[8] Given that it was in same room, Milbourne could have grabbed it and put it in the jacket on his way out of the house for a drug sale. Such an inference is clearly in accord with our holding in Lomax that § 924(c) requires the government to present evidence that the possession of the firearm furthered, advanced, or helped forward a drug trafficking crime.[9] 292 F.3d at 705. In sum, when construing this evidence in the light most favorable to the Government, as we must do, a reasonable fact finder could have found beyond a reasonable doubt that Milbourne's possession of the gun was in furtherance of the drug crime.

III.

For the reasons stated herein, we affirm Milbourne's conviction.

AFFIRMED

---

[8]Indeed, the court has indicated that the Ceballos-Torres factors are only a part of our analysis in determining whether a gun is used in furtherance of a drug crime. See Lomax, 293 F.3d at 705 (noting that the Ceballos-Torres factors may lead a fact finder to conclude that the necessary nexus between a firearm and a drug trafficking activity exists but that our analysis is not limited to these factors alone); see also Krouse, 370 F.3d at 968 (recognizing limits of factors in certain cases).

[9]The district court judge correctly instructed the jury on this definition of a "possession in furtherance." J.A. 244-45.

16

TRAXLER, Circuit Judge, concurring in the result:

I fully concur in the majority's analysis of the constructive amendment issue, and I concur in result reached by my friends as to the section 924(c) charge. I write separately, however, because I believe that the evidence supporting the section 924(c) conviction, viewed in the light most favorable to the government, easily is sufficient to support the jury's verdict.

As we have made clear, section 924(c) "requires the government to present evidence indicating that the possession of a firearm furthered, advanced, or helped forward a drug trafficking crime. However, whether the firearm served such a purpose is ultimately a factual question." United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002).

> When making this factual determination, the fact finder is free to consider the numerous ways in which a firearm might further or advance drug trafficking. For example, a gun could provide a defense against someone trying to steal drugs or drug profits, or it might lessen the chance that a robbery would even be attempted. Additionally, a gun might enable a drug trafficker to ensure that he collects during a drug deal. And a gun could serve as protection in the event that a deal turns sour. Or it might prevent a transaction from turning sour in the first place. Furthermore, a firearm could help a drug trafficker defend his turf by deterring others from operating in the same area.

Id.

In Lomax, this court specified some of the factors that a jury might rely upon to find that a gun furthered a drug trafficking crime, such as the nature of the drug activity at issue, the kind

17

of gun, the general accessibility of the gun, and the proximity of the gun to drugs or drug proceeds. See id. This list of factors, however, is not exhaustive, and we have never required that any particular number of them must point towards a connection between the gun and the crime before a conviction could be sustained.

Applying the Lomax standards to the evidence presented at trial, I think the evidence was clearly enough to permit the jury to conclude that Milbourne, an admitted drug dealer, possessed the gun in furtherance of the drug-trafficking crime alleged in count two of the indictment. During the search of the apartment, law enforcement officers found Milbourne's jacket in the closet of the master bedroom that Milbourne shared with his girlfriend. In the pocket of the jacket was a plastic bag that contained numerous small plastic baggies, each of which contained a small quantity of marijuana. Under the mattress in that bedroom was a loaded 9-mm semi-automatic pistol that Milbourne admitted belonged to him and that he had bought from his drug supplier.[*] See United States v. White, 875 F.2d 427, 433 (4th Cir. 1989) ("[I]t is not unreasonable to recognize that weapons have become tools of the trade in illegal

---

[*]The majority states that the handgun possessed by Milbourne is a common type of gun, a fact that the majority apparently believes points away from the conclusion that the gun was possessed in furtherance of a drug-trafficking crime. Since there is no evidence in the record about the ubiquity of 9-mm semi-automatic weapons, I am not certain of the propriety of this observation. But if such observations are proper in this case, I would note by belief that Milbourne's firearm is the weapon of choice among drug dealers.

18

narcotics operations." (internal quotation marks omitted)). Milbourne is a convicted felon, which makes it illegal for him to possess a pistol, and the loaded gun was easily accessible to anyone who knew where it was hidden. In my view, this evidence could easily support a conclusion that Milbourne used the pistol to protect himself and the drugs he was selling. The government's evidence was thus more than enough to support Milbourne's section 924(c) conviction.

SHEDD, Circuit Judge, concurring:

I concur with the result reached by Judge Gregory and with much of his analysis. However, I believe the issue of the possession of the firearm "in furtherance of" a federal drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) is not a close call at all. We have previously recognized that firearms are tools of the drug trade, see United States v. Ward, 171 F.3d 188, 195 (4th Cir. 1999); United States v. Burgos, 94 F.3d 849, 886 (4th Cir. 1996) (en banc); United States v. White, 875 F.2d 427, 433 (4th Cir. 1989), and that a jury could reasonably conclude that a firearm kept near the location of drugs is for the personal protection of a defendant as a drug dealer or for the protection of his inventory, see United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002).