PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

v.                                              No. 05-4476

BRIAN A. MORELAND,
                    *Defendant-Appellant.*


UNITED STATES OF AMERICA,
                    *Plaintiff-Appellant,*

v.                                              No. 05-4571

BRIAN A. MORELAND,
                    *Defendant-Appellee.*


Appeals from the United States District Court
for the Southern District of West Virginia, at Charleston.
Joseph Robert Goodwin, District Judge.
(CR-04-142)

Argued: December 2, 2005

Decided: February 22, 2006

Before WILKINS, Chief Judge, LUTTIG, Circuit Judge, and
Walter D. KELLEY, Jr., United States District Judge for the
Eastern District of Virginia, sitting by designation.

---

Affirmed in part; vacated and remanded in part by published opinion.
Chief Judge Wilkins wrote the opinion, in which Judge Luttig and
Judge Kelley joined.

---

**COUNSEL**

**ARGUED:** Matthew Anthony Victor, VICTOR, VICTOR & HEL-GOE, L.L.P., Charleston, West Virginia, for Appellant/Cross-Appellee. Hunter P. Smith, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee/Cross-Appellant. **ON BRIEF:** Kasey Warner, United States Attorney, Charleston, West Virginia, for Appellee/Cross-Appellant.

---

**OPINION**

WILKINS, Chief Judge:

Brian A. Moreland appeals his convictions on two counts of possession with the intent to distribute cocaine base, *see* 21 U.S.C.A. § 841(a)(1) (West 1999). The Government cross-appeals Moreland's sentence,[1] arguing that the district court acted unreasonably in imposing a sentence of ten years imprisonment—a two-thirds reduction from the bottom of the advisory guideline range. We affirm Moreland's convictions. However, we agree with the Government that the sentence imposed by the district court is unreasonable. We therefore vacate it and remand for resentencing.

I.

The facts, viewed in the light most favorable to the Government, are as follows. At some point prior to July 16, 2004, confidential informant Martin Williamson informed West Virginia law enforcement officers that an individual nicknamed "Bones" would be coming

---

[1]Moreland also challenges his sentence, maintaining that he is entitled to a jury finding regarding his prior convictions under *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"). This claim is without merit. *See United States v. Cheek*, 415 F.3d 349, 352-53 (4th Cir.), *cert. denied*, 126 S. Ct. 640 (2005).

to Williamson's house for the purpose of selling cocaine base. "Bones" arrived at Williamson's home on July 16, but did not stay. Rather, he dropped off Moreland, whom Williamson knew slightly. Moreland's intent was to sell cocaine base, and Williamson invited him to stay at the residence.

Williamson then called State Trooper Anthony Perdue to arrange a controlled purchase of cocaine base. During the afternoon of the 16th, State Trooper Travis Berry arrived at the home in a vehicle driven by Trooper Perdue. Williamson spoke with the officers and then admitted Trooper Berry to the home, where Trooper Berry purchased 5.93 grams of cocaine base from Moreland. Trooper Berry paid for the narcotics with marked bills.

Later that day, Williamson informed the officers that additional cocaine base would shortly be delivered to the house. After surveilling the area for several hours without any such delivery occurring, the officers decided to proceed with an arrest of Moreland. At approximately 2:00 a.m., a group of several officers, including Trooper Perdue, gathered at Williamson's residence.

One of the officers knocked on the door. Without opening it, Williamson asked who was there. Unable to understand the officers' response, he asked again. Finally, Williamson opened the door. At the hearing on Moreland's suppression motion, Williamson testified that the officers were "welcome" to enter his home once he realized who they were. J.A. 31. However, the officers did not explicitly ask for, and Williamson did not explicitly give, consent to a search. The officers instead directed Williamson to stand aside and entered the residence, where they arrested Moreland. At the time of his arrest, Moreland was in possession of 1.92 grams of cocaine base and almost $1,000 in cash, including $420 of the marked currency used for the controlled purchase. Moreland was thereafter charged with two counts of possessing cocaine base with the intent to distribute it.

A jury convicted Moreland of both counts. Thereafter, a presentence report was prepared that recommended sentencing Moreland as a career offender, *see United States Sentencing Guidelines Manual*, § 4B1.1 (2004), and correctly calculated an advisory guideline range of 360 months to life imprisonment. The district court accepted More-

land's contention that this guideline range "grossly overstate[d] [his] prior criminal conduct." J.A. 271. The district court concluded that a 360-month sentence would be unreasonable in light of the circumstances of Moreland's current and prior offenses and the other factors outlined in 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2005). *See United States v. Moreland*, 366 F. Supp. 2d 416, 419-25 (S.D. W. Va. 2005). The district court sentenced Moreland to the statutory minimum of ten years imprisonment.

## II.

Moreland raises several challenges to his convictions. He maintains that the district court erred in denying his motion to suppress the evidence seized during the post-arrest search; that the court erred in admitting Government Exhibits 1 and 2, the cocaine obtained from Moreland; and that the court should not have allowed lab technician Carrie Kirkpatrick to testify as an expert regarding the identity of the substances obtained from Moreland.[2] We will address these claims seriatim.

## A.

Prior to trial, Moreland moved to suppress the evidence obtained during the post-arrest search, maintaining that the law enforcement officers violated the Fourth Amendment when they entered Williamson's home to arrest Moreland without a search warrant or Williamson's consent. *See Steagald v. United States*, 451 U.S. 204, 205-06 (1981) (holding that absent exigent circumstances, law enforcement officers must obtain a search warrant or consent prior to entering a home for the purpose of effecting an arrest). We affirm the ruling of the district court.

---

[2]Moreland additionally maintains that the district court should have authorized the disclosure of information regarding the composition of the grand jury that indicted him or at least should have reviewed the information *in camera*. Because Moreland made no showing "that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury," Fed. R. Crim. P. 6(e)(3)(E)(ii), we hold that the district court did not abuse its discretion in denying the request, *see In re Grand Jury Subpoena*, 223 F.3d 213, 219 (3d Cir. 2000) (stating standard of review).

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. And, it is well settled that a search conducted without a warrant is per se unreasonable unless it falls within one of the "specifically established and well-delineated exceptions" to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357 (1967). Voluntary consent to a search is such an exception. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

There is no question that consent to search can be implied from a person's words, gestures, or conduct. *See, e.g.*, *United States v. Hylton*, 349 F.3d 781, 786 (4th Cir. 2003) (citing cases). It is the Government's burden, however, to establish the existence of such consent. *See Florida v. Royer*, 460 U.S. 491, 497 (1983) (plurality opinion). "This burden is heavier where consent is not explicit, since consent is not lightly to be inferred." *United States v. Impink*, 728 F.2d 1228, 1232 (9th Cir. 1984) (internal quotation marks omitted). In determining whether consent to search was freely and voluntarily given, the factfinder must examine the totality of the circumstances surrounding the consent. *See Schneckloth*, 412 U.S. at 227. In reviewing the denial of a motion to suppress, we review the factual findings of the district court for clear error and its legal conclusions de novo. *See United States v. Johnson*, 114 F.3d 435, 439 (4th Cir. 1997).

The district court relied on *United States v. Williams*, 106 F.3d 1173 (4th Cir. 1997). In *Williams*, this court found that a confidential informant had implicitly consented to a search of mail addressed to him (and in which he had a reasonable expectation of privacy) when that mail was delivered to a government-controlled post office box at the behest of the confidential informant. *See Williams*, 106 F.3d at 1177-78. The *Williams* panel relied on *United States v. Kurck*, 552 F.2d 1320, 1321 (8th Cir. 1977) (per curiam), in which a confidential informant's cooperation with the Secret Service—particularly, his use of government funds to purchase counterfeit money and his agreement to use his vehicle to lead agents to the counterfeiters—established the informant's implied consent to the search of the vehicle.

In light of the facts found by the district court, the denial of the motion to suppress was not error. Testimony at the suppression hear-

ing established that Williamson had a close working relationship with law enforcement and that he had allowed an undercover officer into his home to purchase drugs from Moreland. Moreover, Williamson testified that the officers were "welcome" to enter his home even though they did not ask his permission to do so. *Cf. United States v. Albrektsen*, 151 F.3d 951, 955 (9th Cir. 1998) (concluding that defendant who moved aside from hotel room door did not implicitly consent to a search when the defendant knew that "entry was going to be made with or without permission").

## B.

Moreland next challenges the admission of Government Exhibits 1 and 2, which consisted of the cocaine purchased from Moreland and seized from him following his arrest. We conclude that the district court did not abuse its discretion in admitting the exhibits. *See United States v. White*, 405 F.3d 208, 212 (4th Cir.) (stating standard of review), *cert. denied*, 126 S. Ct. 668 (2005).

At trial, Trooper Perdue identified Government Exhibit 1 as the 5.93 grams of cocaine base purchased by Trooper Berry, and Government Exhibit 2 as the 1.92 grams of cocaine base seized after Moreland's arrest. Subsequently, however, Trooper Berry identified *Exhibit 2* as the purchased cocaine base, noting that his initials were on a piece of tape on the packaging. The Government recalled Trooper Berry, who reiterated that the purchased cocaine base was Exhibit 1; he surmised that the packaging had been confused at the lab. Over Moreland's objection, the district court admitted the exhibits into evidence.

We conclude that the district court did not abuse its discretion. Trooper Berry's testimony regarding the chain of custody was sufficient to allow the jury to conclude that the substances in Exhibits 1 and 2 were the substances obtained from Moreland. *See* Fed. R. Evid. 901(a); *United States v. Gonzalez*, 940 F.2d 1413, 1421 (11th Cir. 1991). The conflict in the officers' testimony regarding the exhibits goes to the weight of the exhibits, not their admissibility. *See United States v. Rodriguez*, 968 F.2d 130, 143 (2d Cir. 1992).

## C.

The Government offered the testimony of Carrie Kirkpatrick, an employee of the West Virginia State Police forensic laboratory, for the purpose of establishing that the substances obtained from Moreland were cocaine base. The Government sought to have her certified as an expert, and Moreland challenged this classification. The district court stated that it had "never found it necessary . . . to characterize a witness one way or the other," but rather that it would simply rule on the admissibility of her testimony. J.A. 166.

After Kirkpatrick identified the substances obtained from Moreland as cocaine base, Moreland vigorously cross-examined her as to her methodology. Among other things, this cross-examination revealed that Kirkpatrick could not identify what type of chemical reaction was taking place (*e.g.*, combustion, synthesis, decomposition, or displacement), did not know the error rate for the tests she used, and did not know the expiration date on the chemicals she used. Although she knew what chemicals she used in the tests, she could not identify the chemical structure of all of them. Kirkpatrick did testify, however, that the West Virginia lab followed protocols for testing the substances that were "accepted in the scientific community throughout the United States," *id.* at 182, that the machine she used was calibrated on a daily basis (although she could not specifically recall the machine being calibrated on the day she tested the cocaine base obtained from Moreland), and that reviews of her work had consistently demonstrated it to be error-free.

Moreland challenges the admission of Kirkpatrick's testimony, arguing that her deficiencies as a witness should have precluded her from testifying regarding the composition of the substances obtained from him. This challenge fails because the district court did not abuse its discretion in finding Kirkpatrick's testimony admissible. *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (stating standard of review).

The introduction of expert opinion testimony is governed by Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to

determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Expert testimony is admissible under Rule 702 if it concerns (1) scientific, technical, or other specialized knowledge that (2) will aid the trier of fact to understand or resolve a fact at issue. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). The first prong of this inquiry necessitates an examination of whether the reasoning or methodology underlying the expert's proffered opinion is reliable—that is, whether it is supported by adequate validation to render it trustworthy. *See id.* at 590 & n.9. The second prong of the inquiry requires an analysis of whether the opinion is relevant to the facts at issue. *See id.* at 591-92.

A district court considering the admissibility of expert testimony exercises a gatekeeping function to assess whether the proffered evidence is sufficiently reliable and relevant. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). The inquiry to be undertaken by the district court is "a flexible one" focusing on the "principles and methodology" employed by the expert, not on the conclusions reached. *Daubert*, 509 U.S. at 594-95. In evaluating the admissibility of the testimony, the court should consider a variety of factors, including whether the method used is generally accepted in the scientific community; the rate of error, if known; the existence and maintenance of standards; and whether the expert's work has been subjected to peer review. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 261 (4th Cir. 2005), *petition for cert. filed*, 74 U.S.L.W. 3309 (Nov. 7, 2005) (No. 05-616). The court need not determine that the proffered expert testimony is irrefutable or certainly correct. *See Cavallo v. Star Enter.*, 100 F.3d 1150, 1158-59 (4th Cir. 1996). As with all other admissible evidence, expert testimony is subject to testing by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596.

With these standards in mind, the district court did not err in allowing Kirkpatrick to testify that the substances obtained from Moreland were cocaine base. Kirkpatrick testified that her testing methods were accepted in the relevant scientific community and were subject to quality control measures; she also testified regarding the standards against which her test results were measured. Although Kirkpatrick had significant gaps in her knowledge, these gaps were relevant to the weight of her testimony, not its admissibility. We therefore affirm the ruling of the district court.

### III.

Having addressed Moreland's challenges to his convictions, we now consider the Government's appeal of the sentence imposed by the district court. For the reasons set forth below, we vacate the sentence and remand for resentencing.

### A.

In *United States v. Booker*, 125 S. Ct. 738, 756 (2005), the Supreme Court held that the Sixth Amendment right to a jury trial is violated when the district court, acting pursuant to a mandatory guidelines system, imposes a sentence greater than the maximum authorized by the facts found by the jury alone. To remedy this problem, the Court severed and excised the provisions of the Sentencing Reform Act[3] that mandated sentencing and appellate review in conformance with the guidelines. *See Booker*, 125 S. Ct. at 764 (severing and excising 18 U.S.C.A. § 3553(b)(1) (West Supp. 2005) and 18 U.S.C.A. § 3742(e) (West 2000 & Supp. 2005)). This excision rendered the guidelines "effectively advisory," *id.* at 757, and replaced the previous standard of review with review for reasonableness, *see id.* at 765-66.

That the guidelines are non-binding in the wake of *Booker* does not mean that they are irrelevant to the imposition of a sentence. To the

---

[3]Sentencing Reform Act of 1984, Pub. L. No. 98-473, ch. II, 98 Stat. 1987-2040 (1984) (codified as amended at 18 U.S.C.A. §§ 3551-3742 (West 2000 & Supp. 2005) and at 28 U.S.C.A. §§ 991-998 (West 1993 & Supp. 2005)).

contrary, remaining provisions of the Sentencing Reform Act require the district court to consider the guideline range applicable to the defendant and pertinent policy statements of the Sentencing Commission. *See* 18 U.S.C.A. § 3553(a)(4), (a)(5); *Booker*, 125 S. Ct. at 767 (stating that district courts "must consult [the] Guidelines and take them into account when sentencing"). In addition to the guidelines, the district court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C.A. § 3553(a)(1); the court also must ensure that the sentence it imposes "fulfill[s] the congressionally established objectives for sentencing: promoting respect for the law; providing just punishment for the offense; affording adequate deterrence; protecting the public from further criminal activity of the defendant; providing the defendant training, medical care, and correctional treatment; . . . providing restitution to victims," and avoiding unwarranted sentencing disparities. *United States v. Green*, 2006 WL 267217, at *4 (4th Cir. Feb. 6, 2006); *see* 18 U.S.C.A. § 3553(a)(2), (a)(3), (a)(6), (a)(7).

Thus, in imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range. *See United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Next, the court must "determine whether a sentence within that range . . . serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors." *Green*, 2006 WL 267217, at *4. In doing so, the district court should first look to whether a departure is appropriate based on the Guidelines Manual or relevant case law. (We will return to this subject momentarily.) If an appropriate basis for departure exists, the district court may depart. If the resulting departure range still does not serve the factors set forth in § 3553(a), the court may then elect to impose a non-guideline sentence (a "variance sentence"). The district court must articulate the reasons for the sentence imposed, particularly explaining any departure or variance from the guideline range. *See* 18 U.S.C.A. § 3553(c) (West Supp. 2005); *Hughes*, 401 F.3d at 546 & n.5. The explanation of a variance sentence must be tied to the factors set forth in § 3553(a) and must be accompanied by findings of fact as necessary. *See Green*, 2006 WL 267217, at *4-*5. The district court need not discuss each factor set forth in § 3553(a) "in checklist fashion"; "it is enough to calculate the range accurately and explain why

(if the sentence lies outside it) this defendant deserves more or less." *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005) (internal quotation marks omitted).

We note that the continuing validity of departures in post-*Booker* federal sentencing proceedings has been a subject of dispute among the circuits. *Compare United States v. McBride*, 2006 WL 89159, at *4 (6th Cir. Jan. 17, 2006) (stating that consideration of a departure is part of calculating the correct guideline range), *with United States v. Hawk Wing*, 433 F.3d 622, 631 (8th Cir. 2006) (holding that district courts must decide whether a "traditional departure" is appropriate after calculating the guideline range and before deciding whether to impose a variance sentence (internal quotation marks omitted)), *and with United States v. Vaughn*, 2006 WL 29208, at *5 (7th Cir. Jan. 6, 2006) ("[T]he concept of a discretionary departure . . . has been rendered obsolete in the post-*Booker* world." (internal quotation marks omitted)). We believe, however, that so-called "traditional departures"—*i.e.*, those made pursuant to specific guideline provisions or case law[4]—remain an important part of sentencing even after *Booker*.[5]

Our task in reviewing a post-*Booker* federal sentence is to determine whether the sentence is "within the statutorily prescribed range and is reasonable." *Hughes*, 401 F.3d at 547 (citations omitted).

---

[4]A traditional departure based upon case law would include, for example, a departure premised on a previous determination by this court that a particular circumstance is outside the "heartland" of the applicable guideline. *See* U.S.S.G. § 1A1.1, ed. note 4(b); *United States v. Barber*, 119 F.3d 276, 280-81 (4th Cir. 1997).

[5]Although we are certain that departures continue to be relevant to post-*Booker* federal sentencing proceedings, we are less certain that the district court must continue to provide notice of an intent to depart "on a ground not identified for departure either in the presentence report or in a party's prehearing submission." Fed. R. Crim. P. 32(h); *see Hawk Wing*, 433 F.3d at 633 (Loken, Chief Judge, concurring) (arguing that a "notice error" is harmless "because, after *Booker*, every defendant is aware that the [district] court may sentence outside the guidelines range based on the § 3553(a) factors"). This issue remains to be resolved in an appropriate case.

Although this standard clearly requires us to afford a degree of deference to the sentencing decisions of the district court, "reasonableness" is not a code-word for "rubber stamp." Our task is a "complex and nuanced" one, *Green*, 2006 WL 267217, at *5, requiring us to consider the extent to which the sentence imposed by the district court comports with the various, and sometimes competing, goals of § 3553(a).

The reasonableness of a sentence ultimately will turn on the particular factors of each case. Nevertheless, certain principles would appear to be universally applicable. As always, we review legal questions, including the interpretation of the guidelines, de novo, while factual findings are reviewed for clear error. *See United States v. Caplinger*, 339 F.3d 226, 233 (4th Cir. 2003). "An error of law," such as incorrectly identifying the applicable guideline range, "can render a sentence unreasonable," as can an error of fact. *Green*, 2006 WL 267217, at *5.

A sentence that falls within the properly calculated advisory guideline range is entitled to a rebuttable presumption of reasonableness. *See, e.g.*, *United States v. Mykytiuk*, 415 F.3d 606, 607-08 (7th Cir. 2005). This does not mean, however, that a variance sentence is presumptively *un*reasonable. Such a ruling would transform an "effectively advisory" system, *Booker*, 125 S. Ct. at 757, into an effectively mandatory one. Rather, in reviewing a variance sentence, this court must consider—in light of the factors enumerated in § 3553(a) and any relevant guideline provisions—whether the district court acted reasonably with respect to (1) the imposition of a variance sentence, and (2) the extent of the variance. *See id.* at 765-66; *United States v. Mashek*, 406 F.3d 1012, 1017 (8th Cir. 2005); *cf. United States v. Hairston*, 96 F.3d 102, 106-07 (4th Cir. 1996) (noting that both the decision to depart and the extent of departure are subject to review for abuse of discretion).

Reasonableness review involves both procedural and substantive components. *See United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005), *cert. denied*, 74 U.S.L.W. 3393 (U.S. Jan. 9, 2006) (No. 05-7953). A sentence may be procedurally unreasonable, for example, if the district court provides an inadequate statement of reasons or fails to make a necessary factual finding. A sentence may be substantively

unreasonable if the court relies on an improper factor or rejects policies articulated by Congress or the Sentencing Commission. *See Green*, 2006 WL 267217, at *5; *see also United States v. Clark*, 2006 WL 60273, at *3 (4th Cir. Jan. 12, 2006) (holding sentence unreasonable insofar as the district court rested the sentence on a misapplication of § 3553(a)(6)).

Generally, if the reasons justifying the variance are tied to § 3553(a) and are plausible, the sentence will be deemed reasonable. However, when the variance is a substantial one—such as the two-thirds reduction from the bottom of the advisory guideline range that is at issue here—we must more carefully scrutinize the reasoning offered by the district court in support of the sentence. The farther the court diverges from the advisory guideline range, the more compelling the reasons for the divergence must be. *See Dean*, 414 F.3d at 729; *accord United States v. Dalton*, 404 F.3d 1029, 1033 (8th Cir. 2005) (holding, in the context of a downward departure for substantial assistance to the government, that "[a]n extraordinary reduction must be supported by extraordinary circumstances").

B.

We now recount the manner in which the district court sentenced Moreland. As it was required to do, the district court first correctly identified the applicable guideline range. The court determined that Moreland had previously been convicted of two felony controlled substance offenses: in 1992, for delivering a marijuana cigarette to a prison inmate; and in 1996, for possessing with the intent to deliver 6.92 grams of cocaine base. In light of these prior offenses, Moreland's age, and the nature of the offenses of conviction, the guidelines, pursuant to congressional direction, indicated that Moreland should be sentenced as a career offender. *See* U.S.S.G. § 4B1.1(a); 28 U.S.C.A. § 994(h) (West 1993 & Supp. 2005). Because the maximum statutory penalty was life imprisonment, *see* 21 U.S.C.A. § 841(b)(1)(B) (West 1999 & Supp. 2005), the career offender guideline provided for a base offense level of 37, *see* U.S.S.G. § 4B1.1(b)(A). This offense level, combined with the guideline-dictated Criminal History Category of VI, *see id.* § 4B1.1(b), produced a guideline range of 360 months to life imprisonment. The district court determined (incorrectly, as explained *infra* note 9) that

without application of § 4B1.1, Moreland's guideline range would have been 78-97 months.

The district court then turned to consideration of the factors set forth in § 3553(a).[6] Looking first at "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C.A. § 3553(a)(1), the court noted that the offense involved a relatively small amount of cocaine base, was nonviolent, and did not involve a firearm. In the same vein, the court observed that neither of Moreland's prior offenses had involved violence or firearms. The court further concluded that Moreland "has the ability and potential to become a productive member of society," *Moreland*, 366 F. Supp. 2d at 420, based on Moreland's completion of high school and some college and his employment history.

The district court next considered the factors set forth in 18 U.S.C.A. § 3553(a)(2). In particular, the district court indicated that it was troubled by the notion of sentencing Moreland as a career offender, noting that the career offender guideline "cast[s] a wide net," putting "Moreland's distribution of a single marijuana cigarette on par with a kingpin in a drug conspiracy who is convicted of distributing kilos of drugs or a violent offender who uses firearms or threats of harm to commit his crimes." *Id.* at 421. The court then concluded that Moreland's current and prior offenses "hardly constitute the type and pattern of offenses that would indicate that Mr. Moreland has made a career out of drug trafficking." *Id.*

Based on this analysis, the district court concluded that a variance sentence was warranted because it was not appropriate to sentence

---

[6]The district court did not explicitly consider the possibility of a departure under U.S.S.G. § 4A1.3(b)(1), p.s. (allowing for a downward departure "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes"). We do not fault it for not doing so, however. At the time of Moreland's sentencing, the only direction from this circuit regarding post-*Booker* sentencing was *Hughes*, which did not mention departures. In any event, as discussed *infra* note 8, such a departure would have been improper.

Moreland as a career offender. Rather, the court concluded that the statutory mandatory minimum sentence of ten years—20 years, or two-thirds, less than the bottom of the advisory guideline range—was sufficient to achieve the goals set forth in § 3553(a)(2). This sentence, the court stated, was "well above" the non-career offender guideline range and thus accounted for Moreland's previous convictions; the court additionally viewed the sentence as being long enough to deter Moreland from committing future crimes, but short enough to give Moreland "an excellent chance of turning his life around" after prison. *Id.* at 420, 422. Finally, the district court reasoned that a sentence of ten years would not produce an *unwarranted* sentencing disparity, *see* 18 U.S.C.A. § 3553(a)(6); in the view of the district court, a lower sentence than that given to other career offenders was appropriate under the circumstances. *See Moreland*, 366 F. Supp. 2d at 422-24.

## C.

### 1.

In assessing the sentence imposed by the district court, we begin with the question of whether the court acted reasonably in deciding to impose a variance sentence. We conclude that this decision was a reasonable one.

Congress directed the Sentencing Commission to "assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized" for offenders who repeatedly commit felonies involving drugs or violence. 28 U.S.C.A. § 994(h). This directive evinces Congress' view that certain repeat offenders should receive markedly longer sentences than other repeat offenders or those with little or no criminal history. *Accord* 28 U.S.C.A. § 994(i) (West 1993 & Supp. 2005) (directing the Commission to "assure that the guidelines specify a sentence to a substantial term of imprisonment" for certain categories of offenders). The Sentencing Commission has recognized, however, that a defendant's record of prior convictions may increase his sentence disproportionately to the severity of his prior crimes. *See* U.S.S.G. § 4A1.3(b), p.s.

We agree with the district court that a variance was warranted here.[7]

---

[7]Indeed, the Government conceded as much at oral argument. The Government's challenge to the sentence is not to the fact of the variance, but to its extent.

Application of the career offender guideline is "fraught with potential imprecision." *United States v. Adkins*, 937 F.2d 947, 952 (4th Cir. 1991). The career offender guideline covers a broad range of offenders, encompassing the street-level dealer who handles only small quantities of drugs and the drug kingpin or the recidivist with a history of violence. The district court here determined that sentencing Moreland as a career offender would not comport with the goals of § 3553(a), and we cannot reject this conclusion as unreasonable. As the district court noted, Moreland's prior offenses involved small quantities of drugs and no firearms or violence.[8]

2.

The second question we must address is whether the extent of the variance was reasonable. For the reasons set forth below, we conclude that the district court committed "a clear error of judgment by arriving at a sentence outside the limited range of choice dictated by the facts of the case." *Hawk Wing*, 433 F.3d at 631 (internal quotation marks omitted).

We note at the outset that the problem does not lie in the manner in which the district court set forth its reasoning concerning the sentence imposed—in other words, the sentence is reasonable in a procedural sense. Indeed, the careful consideration of the pertinent § 3553(a) factors by the district court was exemplary. However, the circumstances of this case are not so compelling as to warrant the substantial variance imposed by the district court.

---

[8]This holding is not inconsistent with our pre-*Booker* holdings regarding *departures* from a career offender guideline range. *See United States v. Pearce*, 191 F.3d 488, 498 (4th Cir. 1999) ("[W]e cannot conceive of any drug felony that would be considered minor" for purposes of departing from a career offender guideline range.); *United States v. Brown*, 23 F.3d 839, 841-42 (4th Cir. 1994) (holding that downward departure from career offender guideline range was not justified by small amount of drugs involved in prior offense). Were we reviewing a departure under the previous, mandatory system, these precedents would compel us to reverse. However, what we are reviewing here is an exercise of discretion by the district court to impose a sentence under § 3553(a). Previous rulings concerning departures under the now-defunct § 3553(b)(1) may inform our analysis of such a sentence, but they cannot control it.

The district court based the variance sentence on three circumstances: (1) the relatively small quantity of drugs involved in Moreland's current and prior offenses; (2) the absence of firearms or violence from the offenses; and, to a lesser extent, (3) its perception of Moreland as a person with "the ability and potential to become a productive member of society." *Moreland*, 366 F. Supp. 2d at 420. With respect to the first two items in particular, the district court concluded that Moreland was not the type of person Congress intended to target as a career offender.

To the extent that the sentence imposed by the district court rests on a rejection of congressional policy with respect to repeat drug offenders, it is subject to reversal on that basis alone. Because it appears that the district court did attempt to reconcile congressional policy with the circumstances of this case, however, we will not assume that an outright rejection occurred. *See Moreland*, 366 F. Supp. 2d at 420 (asserting that a sentence of ten years "takes into account the fact that the present offense is not his first conviction"). We therefore must consider whether the circumstances of this case are so compelling as to warrant the maximum possible downward variance, *i.e.*, the imposition of the statutory mandatory minimum sentence.

In a word, they are not. Based on the record before us, Moreland appears to be a small-time drug dealer. He is, nevertheless, a *repeat* drug offender who appears to have come to West Virginia for the sole purpose of selling cocaine base.[9] Additionally, Moreland's desultory

[9]In this vein, we note that we are not persuaded that sentencing Moreland to the statutory mandatory minimum sentence will provide "just punishment" for the offense. 18 U.S.C.A. § 3553(a)(2)(A). There is no question that ten years is "a very substantial amount of time to spend in prison." *Moreland*, 366 F. Supp. 2d at 420. It is also, however, the same sentence Moreland would have received if he had had only one prior conviction. The sentence imposed by the district court thus does not truly account for Congress' judgment that those who repeatedly commit drug felonies should be severely punished for their actions.

Further, it was incorrect for the district court to compare the statutory mandatory minimum sentence of ten years to the guideline range of 78 to 97 months imprisonment that it calculated would have applied to

pursuit of his education and his spotty employment history—six jobs over the course of seven years, with his last legitimate employment in 1999—can provide little confidence in his willingness to become a productive member of society, irrespective of his ability to do so. If Moreland's circumstances are so compelling as to warrant a two-thirds reduction from the bottom of the advisory guideline range, it is difficult to imagine any meaningful limit on the discretion of the district court.[10] *But cf. United States v. Williams*, 2006 WL 68559, at \*4-\*5 (11th Cir. Jan. 13, 2006) (per curiam) (affirming, as reasonable, 52 percent downward variance from career offender guideline range based on the assessment of the district court that the advisory guideline range of 188 to 235 months imprisonment was disproportionate to the offense of selling $350 worth of cocaine base).

We therefore vacate the sentence and remand for the imposition of a sentence of no less than 20 years imprisonment.

## IV.

For the reasons set forth above, we affirm Moreland's convictions. We vacate his sentence and remand for resentencing.

*AFFIRMED IN PART;*
*VACATED AND REMANDED IN PART*

---

Moreland had he not qualified for career offender status. *See id.* Once the Government established that Moreland had been convicted of *one* prior drug felony, he became subject to a statutory mandatory minimum term of ten years imprisonment. *See* 21 U.S.C.A. § 841(b)(1)(B). Moreland's guideline range had he not been a career offender, therefore, would have been ten years. *See* U.S.S.G. § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.").

[10]For an example of truly compelling circumstances justifying the imposition of a sentence nearly twice the maximum of the advisory guideline range, see *United States v. Jordan*, 2006 WL 73406, at \*4-\*6 (7th Cir. Jan. 13, 2006).