**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-4980

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DONNA SHULL, a/k/a Donna Chapman,

Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Huntington. Robert C. Chambers, District Judge. (CR-05-110)

Argued: May 26, 2006                    Decided: July 7, 2006

Before MICHAEL and KING, Circuit Judges, and Joseph F. ANDERSON, Jr., Chief United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Edward Henry Weis, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Karen B. George, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee. **ON BRIEF:** Mary Lou Newberger, Federal Public Defender, Jonathan D. Byrne, Appellate Counsel, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Charles T. Miller, Acting United States Attorney, Charleston, West Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Donna Shull appeals from the twenty-one-month sentence imposed on her in 2005 in the Southern District of West Virginia, after she had entered pleas of guilty to a two-count criminal information, charging her with fraud offenses. She does not challenge her convictions on appeal, but contends only that (1) the sentencing court erred in finding the amount of loss caused by her offenses, thereby miscalculating her Guidelines sentencing range; and (2) her sentence is otherwise unreasonable. As explained below, we affirm her sentence.

I.

On May 26, 2005, Shull and the Government entered into a written plea agreement, whereby she agreed to waive her right to indictment and plead guilty to a two-count information. The information was filed against her in the district court on May 31, 2005. Count One charged the knowing concealment of an event that would have affected Shull's ability to obtain Supplemental Security Income ("SSI"), in contravention of 42 U.S.C. § 1383a(a)(3) (the "SSI offense"). In Count Two, Shull was charged with having used, with the intent to defraud, "one or more unauthorized access

devices," in violation of 18 U.S.C. § 1029(a)(2) (the "access device offense").[1]

On June 30, 2005, the district court conducted Shull's Rule 11 plea hearing in Huntington, West Virginia. At that hearing, Tim Morton, a Special Agent with the Social Security Administration's Inspector General's Office, testified that Shull had accepted SSI benefits while concealing the fact that she worked as a personal care assistant for two elderly women, Ms. Gray and Ms. Stanley. According to Morton, Shull worked as a caretaker for Ms. Gray from July 2004 until her death in September 2004, and thereafter worked as Ms. Stanley's caretaker until she passed away on December 21, 2004. Morton further testified that, as a result of concealing her caretaking activities, Shull had received $6,598.44 in SSI benefits from the Social Security Administration (the "SSA") to which she was not entitled. In responding to this testimony at the plea hearing, Shull acknowledged that it was "substantially correct."

---

[1]Pursuant to § 1029(e)(1), an "access device" is defined as

> any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument).

In the access device offense, Shull used credit cards which she had fraudulently registered in another person's name, and also forged checks drawn on that person's account.

J.A. 37.[2]  Shull also admitted that, without authorization, she had registered credit cards in Gray's name, she had used those credit cards to make purchases, and that she had forged checks drawn on Gray's account.  After finding a sufficient factual basis for Shull's guilty pleas and satisfying itself that Shull fully understood her rights and what she was doing, the district court accepted Shull's guilty pleas.

Shull's presentence report (the "PSR") was submitted to the district court on August 8, 2005.  It recommended assigning Shull a base offense level of 6 for each of her offenses, see USSG § 2B1.1 (2004), and grouping the offenses under the Guidelines, see id. § 3D1.2(d).  The PSR further recommended applying (1) a four-level enhancement because the amount of loss resulting from Shull's offenses, when combined, totaled more than $10,000 ($6,598.44 on the SSI offense and $6,966.44 on the access device offense), see id. § 2B1.1(b)(1)(C); (2) a two-level enhancement because the offense charged in Count Two involved the unlawful use of a means of identification, see id. § 2B1.1(b)(10); (3) a four-level enhancement because Shull "knew or should have known" that the victim of her access device offense (Ms. Gray) was vulnerable, see id. § 3A1.1(b)(1); and (4) a two-level reduction for acceptance of responsibility, see id. § 3E1.1(a).  The PSR therefore

_____

[2]Our citations to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

5

calculated Shull's total offense level at 12, which, when combined with a criminal history category of III, yielded an advisory Guidelines sentencing range of fifteen to twenty-one months imprisonment.

Shull thereafter filed objections to the PSR, contending that it overestimated the losses caused by each of her offenses. In Shull's view the loss caused by her SSI offense was $3,474 — not the $6,598.44 indicated by the PSR. Shull's objection centered on her assertion that, when she worked as a caretaker for Ms. Gray and Ms. Stanley, she was their employee and was not self-employed. Pursuant to its regulations, the SSA's calculation of income for SSI eligibility purposes depends, in part, upon whether the income is received in the form of employee "wages" or "[n]et earnings from self-employment." See 20 C.F.R. § 416.1111(a) & (b). Importantly, employee wages count as income for the month in which the wages are actually received, while income earned through self-employment is divided "equally among the months in the taxable year." Id.[3] In Shull's view, she was a wage-earning employee when she worked as a caretaker from July though December 2004, and her resulting income therefore only affected her SSI eligibility for those specific

_____

[3]Pursuant to these SSA regulations, if an employee earns $1,200 in wages in a given year, all in January, the SSA will consider her to have earned $1,200 for January and nothing for the year's remaining eleven months. On the other hand, if a self-employed SSI claimant similarly makes $1,200 in January and nothing for the balance of the year, the SSA will calculate her income as $100 for each month of the year.

months.  She thus contended that she was entitled to all of the SSI benefits she had received for the six months from January through June of 2004.

Shull further contended, in objecting to the PSR, that the loss caused by her access device offense should be reduced by approximately $500, from the PSR's recommendation of $6,966.44 to the sum of $6,439.98.  In so contending, Shull asserted that some of the access device activity cited in the PSR had been approved by Ms. Gray.  Shull therefore maintained that the total loss caused by her offenses was $9,913.98, and that application of a two-level enhancement for amount of loss — in lieu of the four-level enhancement recommended by the PSR — was appropriate.  See USSG § 2B1.1(b)(1)(B) & (C).

Shull renewed her objections to the PSR at her September 12, 2005 sentencing hearing.  In responding to Shull's contention concerning the SSI offense, the Assistant United States Attorney asserted that "when the Social Security Administration was presented with the facts of this case and they went through and made the calculation for overpayment, they considered [Shull] . . . as self-employed."  J.A. 71.  According to the prosecutor, the SSA therefore concluded that, because she had concealed her caretaking activities, Shull received $6,598.44 in SSI benefits to which she was not entitled.  When questioned by the sentencing

7

court, Shull's lawyer acknowledged the SSA ruling, but maintained that it should not be accorded any weight by the sentencing court.

The court overruled Shull's objection to the PSR on the amount of loss caused by her SSI offense. In so doing, the court appears to have relied exclusively on the SSA's ruling, concluding that "some deference is fairly afforded to the Social Security Administration." Accordingly, the court found the loss caused by Shull's SSI offense to be the amount specified by the SSA in its ruling, that is, $6,598.44. After finding that a loss of $6,268.21 was attributable to her access device offense, the court concluded that the total loss resulting from Shull's offenses was the sum of $12,866.65, which sufficiently supported the four-level, amount-of-loss enhancement recommended by the PSR. The court thus concluded that the PSR had correctly calculated Shull's Guidelines sentencing range as fifteen to twenty-one months imprisonment.

In deciding upon an appropriate sentence, the court stated that it was "baffled at why" Shull had committed the SSI offense, in that the court had given her a "break" on a similar conviction two years before. J.A. 82-83. The court then sentenced Shull to twenty-one months in custody, the top of the Guidelines range. The court further ordered Shull's sentence to run consecutive to the twelve-month sentence she had previously received for violating the conditions of her supervised release, yielding a total of thirty-

8

three months.  Shull appeals from her sentence, and we possess jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

II.

On appeal, we review a sentence imposed under the advisory Guidelines regime established by United States v. Booker, 543 U.S. 220(2005), to determine whether it "is within the statutorily prescribed range and is reasonable."  United States v. Moreland, 437 F.3d 424, 433 (4th Cir. 2006)  (internal quotation marks omitted).  "Reasonableness review involves both procedural and substantive components."  Id. at 434.  A post-Booker sentence is procedurally reasonable if the sentencing court has properly calculated a defendant's Guidelines range, determined whether a sentence within that range serves the other factors enumerated in 18 U.S.C. § 3553(a), and then imposed an appropriate sentence.  Id. at 432.  Because a sentencing court is obliged to consult the Guidelines, an error in the Guidelines calculation renders a resulting sentence unreasonable per se.  See id.  And a sentence that is procedurally reasonable is entitled to a presumption of substantive reasonableness if it falls within the properly calculated Guidelines range.  Id. at 433.  In conducting our review, "we review legal questions, including the interpretation of the guidelines, de novo, while factual findings are reviewed for clear error."  Id.

III.

A.

Shull's primary appellate contention is that her sentence was procedurally unreasonable because the sentencing court erred in calculating the loss caused by her offenses as more than $10,000 and, consequently, in applying a four-level amount-of-loss enhancement in its determination of her Guidelines range. Specifically, she maintains that the court clearly erred in finding that her SSI offense caused a loss of $6,598.44. According to Shull, the court should have determined that she was a wage-earning employee when she worked as a caretaker, and that she was therefore entitled to the SSI benefits she received for the six-month period from January through June of 2004. Under Shull's view, the loss caused by her SSI offense was $3,474, which, combined with the loss of $6,268.21 attributed to her access device offense by the sentencing court, would yield a total loss of $9,742.21, resulting in an enhancement of two levels only. See USSG § 2B1.1(b)(1)(C).

Shull's SSI offense consisted of accepting SSI benefits while concealing her caretaking activities, and the loss caused by that offense was the value of the SSI benefits she improperly received because of her concealment. See USSG § 2B1.1, comment. (n.3(f)(ii) (2004) ("In a case involving government benefits . . . , loss shall be considered to be not less than the value of the benefits obtained by unintended recipients . . . ."). In its administrative

10

ruling on the matter, the SSA concluded that it would have awarded Shull $6,598.44 less in SSI benefits if she had disclosed her caretaking activities. And, in seeking to ascertain the amount of loss caused by Shull's SSI offense, the sentencing court relied on the SSA's ruling.

On appeal, Shull does not challenge the validity of the SSA's ruling. Rather, she contends that the sentencing court was not entitled to rely on the ruling for two reasons: (1) the burden of proof is allocated differently in SSA proceedings than it is in federal sentencing proceedings; and (2) as no record of the SSA proceeding was introduced at Shull's sentencing hearing, the SSA's ruling could not be "meaningful[ly] review[ed]" by the sentencing court. Appellant's Br. at 10. In so contending, Shull has misconstrued the amount of loss inquiry. The court was not obliged to determine whether Shull was an employee, on the one hand, or self-employed, on the other; its task was to determine the difference between the value of the SSI benefits Shull actually received, and the value of those she would have been awarded if she had disclosed her caretaking activities. And the agency that administers a benefit program is in a decidedly better position than a federal sentencing court to determine the amount of benefits a claimant would have received if she had been honest. The SSA's ruling was therefore strong evidence that it had overpaid Shull by

11

$6,598.44, and the sentencing court was thus entitled to rely upon it.

In these circumstances, the sentencing court did not err in finding that the loss caused by Shull's SSI offense was $6,598.44. As Shull has not challenged the court's finding that a loss of $6,268.21 was caused by her access device offense, the court thus did not err in concluding that her offenses caused a loss of more than $10,000. And the court was therefore obliged to apply a four-level amount-of-loss enhancement in its calculation of the Guidelines range. Accordingly, we reject Shull's contention that her sentence is procedurally unreasonable.

B.

Shull further contends that, even if procedurally reasonable, her twenty-one-month sentence is substantively unreasonable. In that regard, Shull's sentence fell within her properly calculated Guidelines range of fifteen to twenty-one months, and is therefore presumptively reasonable. See United States v. Moreland, 437 F.3d 424, 433 (4th Cir. 2006). Shull attempts to rebut this presumption by maintaining that her sentence was greater than that necessary to "reflect the seriousness" of her offenses and to "afford adequate deterrence to criminal conduct," see 18 U.S.C. § 3553(a)(2)(A) & (C), and also that a lesser sentence would afford her a greater opportunity to make restitution, see id. § 3553(a)(7). Although

12

Shull's contentions might have properly aided the sentencing court in selecting an appropriate sentence, they are insufficient to overcome the presumption that her Guidelines sentence is substantively reasonable. In these circumstances, this contention must also be rejected.

IV.

Pursuant to the foregoing, we reject Shull's assignments of error and affirm her sentence.

AFFIRMED

13