**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-4107**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MARK JAMES KONSAVICH,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg. Glen E. Conrad, District Judge. (5:05-cr-00019-gec)

Submitted: April 5, 2007                    Decided: May 9, 2007

Before TRAXLER, KING, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Aaron L. Cook, Harrisonburg, Virginia, for Appellant. John L. Brownlee, United States Attorney, Jean B. Hudson, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Mark James Konsavich appeals his 235-month prison sentence resulting from his conviction for conspiracy to manufacture and distribute methamphetamine in violation of 21 U.S.C. § 846 (2000). Konsavich contends that the district court erred in applying a six-level enhancement for creating a substantial risk of harm to the life of a minor, U.S. Sentencing Guidelines Manual § 2D1.1(b)(6)(C) (2005); applying a two-level enhancement for an offense involving knowing importation of illegal chemicals, id. § 2D1.1(b)(4); and rejecting a two-level reduction under the "safety valve" provision, id. § 5C1.2(b). In addition, Konsavich argues that this Court has made the Sentencing Guidelines effectively mandatory in violation of the Sixth Amendment.

Between September 2004 and March 2005, Konsavich was involved in a conspiracy to manufacture and distribute methamphetamine at various locations in Virginia, Pennsylvania, and the District of Columbia. From September through early November, Konsavich, Stephani Dawson, David Vandevander, and Samuel Russo purchased methamphetamine from a source in Atlanta, Georgia and resold the drugs in Washington, D.C. In mid-November, Dawson, Russo, and Konsavich traveled to a Pennsylvania hotel, where Konsavich, who had worked as a chemist, unsuccessfully attempted to manufacture methamphetamine. Konsavich attributed his failure to the poor quality of the red phosphorous used in the attempt.

-2-

On November 27, 2004, Konsavich, Dawson, and Russo moved into the home of Joseph Leonard, located at 2208 Readus Road in Edinburgh, Virginia. Leonard lived in the house with his two-year old daughter. Konsavich lived at the Readus Road house until Christmas. During that time, Konsavich arranged for a contact in Canada to ship pharmaceutical-grade red phosphorous to a location in Niagara Falls, Canada. Konsavich then had David Lounsbury, an unindicted coconspirator, drive to Canada and pick up the phosphorous, which Lounsbury gave to Dawson.

During his time at Readus Road, Konsavich attempted to manufacture methamphetamine between five and eleven separate times, with an approximate yield of ten to twelve grams of methamphetamine per attempt. While most of the attempts were conducted in an outbuilding approximately twenty to thirty yards from the residence, at least one attempt took place inside the home, when Leonard's daughter was not present. The chemicals, including acetone, denatured alcohol, xylene, and camping fuel, were stored in the outbuilding. Konsavich disposed of chemicals and washed glassware and other equipment in the kitchen of the residence.

In reviewing a post-Booker sentence of a district court, the overall inquiry is whether the sentence is "within the statutorily prescribed range and is reasonable." United States v. Hughes, 401 F.3d 540, 547 (4th Cir. 2005). "As always, we review legal questions, including the interpretation of the guidelines, de novo,

-3-

while factual findings are reviewed for clear error." <u>United States v. Moreland</u>, 437 F.3d 424, 433 (4th Cir. 2006). Errors of either law or fact may render a given sentence unreasonable. <u>Id.</u>

The Guidelines provide that "[i]f the offense (I) involved the manufacture of . . . methamphetamine; and (ii) created a substantial risk of harm to the life of a minor," there is a six-level sentencing enhancement. § 2D1.1(b)(6)(C). The commentary to the Guidelines provides that in determining application of the enhancement, the court shall consider: (I) the quantity of chemicals or other hazardous substances and the manner of their storage; (ii) the manner of disposal of chemicals or other hazardous substances; (iii) the duration of the offense and the extent of the manufacturing; and (iv) "[t]he location of the laboratory (<u>e.g.</u>, whether the laboratory is located in a residential neighborhood or remote area), and the number of human lives placed at substantial risk of harm." <u>Id.</u> cmt. 20(A).

Konsavich argues that there was no evidence that any methamphetamine was cooked while the minor was present, and that most of the cooking took place in an outbuilding adjacent to the minor's residence, where the chemicals were stored and locked. Additionally, Konsavich notes that the district court did not consider any of the application factors cited in the Guidelines.

The record indicates that a minor was living in the Readus Road residence while Konsavich stayed there. During that time,

-4-

Konsavich participated in cooking methamphetamine in the outbuilding, approximately twenty to thirty yards from the residence, as well as at least one time in the residence. There was testimony that many volatile and toxic chemicals were stored in the outbuilding, that the cooking process was dangerous, and that on numerous occasions problems occurred during the cooking process, including the release of an acidic orange gas and a fire that burned down the outbuilding. In addition, there was testimony that Konsavich often cooked the methamphetamine while smoking cigarettes, despite the flammable nature of the chemicals involved in the cooking process. Finally, the district court heard testimony about the effects of the chemicals used in methamphetamine production on children, including the possibility of chemical burns and brain swelling.

Given that some manufacture of methamphetamine took place within a short distance of a house where a minor resided, and that manufacture occurred at least once in the house, the district court did not err in applying the enhancement. See, e.g., United States v. Frost, No. 05-5112, 2006 WL 2433961, at *2 (4th Cir. Aug 23, 2006) (unpublished) (noting danger of methamphetamine cooking and applying enhancement where methamphetamine was cooked in outbuilding and possibly in residence); United States v. Bivens, 129 Fed. App'x 159, 165 (6th Cir. 2005) (noting likelihood that chemical odors from methamphetamine production could reach house

-5-

from shed fifty yards away). Even assuming that the minor was not present during the methamphetamine production, Konsavich does not claim that he was unaware that a minor resided at Readus Road. Cf. United States v. Simpson, 334 F.3d 453, 454 (5th Cir. 2003) (requiring presence of minor during defendant's participation in the conspiracy or evidence indicating that danger to minor was reasonably foreseeable to defendant for six-level enhancement). Konsavich's claim that the enhancement should not apply because the chemicals were all kept in the locked outbuilding is unavailing due to the risk of explosion and the evidence that some manufacturing materials were stored and disposed of in the residence. See Bivens, 129 Fed. App'x at 165 ("The[] [defendants'] claims [that they] restricted the manufacturing process to the locked barn is also belied by the presence in the house of lab components, such as pill-grinders, scales, and baggies, and of firearms and finished methamphetamine.").

Although the district court did not explicitly discuss the application factors, those factors support the enhancement. For example, the district court discussed the outbuilding and its proximity to the residence where a minor resided during at least some of the manufacturing at issue in this case. This discussion supports the conclusion that the location of the laboratory placed a minor at risk. Moreover, there was testimony that numerous caustic, volatile, and flammable chemicals were stored in the

outbuilding thirty yards from the residence; that at times chemicals were disposed of in the residence's kitchen; that the manufacturing was a hit-or-miss process, involving impure chemicals; and that Konsavich smoked cigarettes during the cooking of the methamphetamine, cf. id. (noting poor judgment shown by using blowtorch to cook methamphetamine inside home). Thus, all four of the application factors support the enhancement, and we affirm the application of the six-level enhancement under § 2D1.1(b)(6)(C).

Konsavich objects to the application of the two-level enhancement under § 2D1.1(b)(4) for manufacture of methamphetamine from chemicals that the defendant knew were imported unlawfully. Konsavich argues that there is no evidence in the record that he knew that the red phosphorus used in production of the methamphetamine during the conspiracy was imported unlawfully. This argument fails. The record demonstrates that Konsavich wanted to obtain pharmaceutical-grade red phosphorous and arranged for a contact in Canada to mail the phosphorous to a location in Canada, where a coconspirator drove to pick up the phosphorous. Konsavich suggested this arrangement to avoid the scrutiny arising from a direct shipment of red phosphorous from Canada into the United States. Accordingly, the district court did not clearly err in concluding that Konsavich manufactured methamphetamine using

phosphorus that he knew had been imported unlawfully. We thus affirm the two-level enhancement under § 2D1.1(b)(4).

Though the district court did not rule on Konsavich's request for the application of the "safety valve" under § 5C1.2(b), this failure did not prejudice Konsavich because he does not meet the criteria for the application of the reduction. Under 18 U.S.C. § 3553(f) (2000), a court can only apply the safety-valve reduction where a defendant, not later than the sentencing hearing, "has truthfully provided to the Government all information and evidence the defendant has concerning the offense." There is no dispute that Konsavich provided the Government with information relating to the charged conspiracy. At trial, however, Konsavich continued to maintain that he was an undercover Drug Enforcement Agent and that he was manufacturing fake methamphetamine.

To meet the truthful disclosure requirement, a defendant must disclose truthfully "all he knows concerning both his involvement and that of any co-conspirators." United States v. Ivester, 75 F.3d 182, 184 (4th Cir. 1996). Because Konsavich was not truthful about his own involvement in the charged conspiracy, he does not meet the criteria for the safety valve reduction under § 5C1.2(b) of the Guidelines and 18 U.S.C. § 3553(f). Any failure of the district court to address this issue was harmless because Konsavich does not meet the criteria for a safety-valve reduction.

Finally, Konsavich argues that despite <u>United States v. Booker</u>, 543 U.S. 220 (2005), this Court has imposed the Guidelines as effectively mandatory in violation of the Sixth Amendment. In <u>Moreland</u>, however, this Court held that a sentence that is outside the Guidelines range will be affirmed so long as it is reasonable. <u>See</u> 437 F.3d at 433-34. Thus, the Guidelines are not effectively mandatory in this Circuit and Konsavich's argument fails.

Accordingly, we affirm Konsavich's sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>