**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-5010

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ALBERT GOMEZ LASDULCE, a/k/a Balute,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Walter D. Kelley, Jr., District Judge. (CR-04-227-WDK)

Submitted: April 6, 2007          Decided: July 11, 2007

Before NIEMEYER, MOTZ, and TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Toni Dorothea Brown, Norfolk, Virginia, for Appellant. Charles Philip Rosenberg, United States Attorney, Alexandria, Virginia, Paul Joseph McNulty, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Laura Marie Everhart, Assistant United States Attorney, Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Albert Gomez Lasdulce was convicted of conspiracy to distribute and possess with intent to distribute fifty grams or more of methamphetmine; two counts of distribution of methamphetamine; and attempted possession with intent to distribute methamphetamine. He was acquitted of several charges, including possession of a firearm in furtherance of a drug trafficking offense. The district court granted Lasdulce's motion for judgment of acquittal on one of the distribution counts. He was sentenced to 240 months in prison. Lasdulce appeals. His attorney has filed a brief in accordance with <u>Anders v. California</u>, 386 U.S. 738 (1967), raising two issues but stating that there are no meritorious issues for appeal. Lasdulce has filed a pro se informal brief raising an additional issue. We affirm.

I

Evidence at trial established that Lasdulce was a member of a large-scale methamphetamine organization operating in the Norfolk-Virginia Beach area. Lasdulce was an active methamphetamine dealer; he sold the drug mainly out of his residence on Hanyen Drive in Norfolk. His primary supplier was Jose Deguia, who typically delivered around ten grams of the drug to Lasdulce twice a week and was paid between $2500 and $3000 for each delivery.

- 2 -

Large quantities of methamphetamine were shipped from California via Federal Express to addresses in Norfolk. One address was Deguia's residence at 3004 Glen Drive in Norfolk; another was Lasdulce's home. A customer of Lasdulce, Tina Marie Langer, was at Lasdulce's home when one such package was delivered. Langer learned that the package was delivered to Lasdulce's residence so that Lasdulce would "take the fall" for Deguia if authorities were to discover what the package contained. Payment for the methamphetmine shipment was wired to California via Western Union.

On March 31, 2004, a narcotics dog working at a Federal Express office in Norfolk alerted to a package shipped from California and addressed to 3004 Glen Drive in Norfolk. Officers obtained a search warrant for the package, which contained methamphetamine. Officers then obtained an anticipatory search warrant for the residence. They repackaged the drugs. An officer disguised as a Federal Express driver attempted to deliver the package; however, no one answered the door, and the anticipatory warrant was not executed.

On May 25, 2004, a narcotics dog at the Federal Express office alerted to two packages addressed to 5368 Hanxen Drive. Officers assumed that the address had been misspelled and that the correct spelling was Hanyen. They obtained a search warrant, opened the packages, and found methamphetamine inside. On May 26,

an officer dressed as a Federal Express driver attempted delivery of the packages; however, no one answered the door. Deguia was seen near the Hanyen Drive house during this time. On May 27, someone called Federal Express to authorize leaving the packages at the residence without a signature.

On May 28, a police officer, again dressed as a Federal Express driver, left the packages on the porch when no one answered the door. He drove away. Moments later, Lasdulce exited the residence, picked up the packages, and placed them in a pickup truck. He was arrested as he got into the truck. Officers obtained a search warrant for the residence later that day. When they executed the warrant, they found firearms, material used to manufacture methamphetamine, and various surveillance devices.

## II

Lasdulce claims that the search warrant for his residence was invalid and that the district court erred when it denied his motion to suppress evidence seized from his home. According to Lasdulce, the warrant alleged stale facts and focused primarily on his codefendant, Deguia, who lived elsewhere. In a related argument, Lasdulce contends that the district court erred when it denied his motion for a new trial, which was based on his claim that evidence seized during the search should not have been admitted into evidence.

We review de novo a district court's disposition of a motion to suppress. United States v. Hurwitz, 459 F.3d 463, 470 (4th Cir. 2006). In assessing a district court's ruling, we give great deference to the determination of probable cause by the magistrate who issued the search warrant. United States v. Robinson, 275 F.3d 371, 380 (4th Cir. 2001).

Stale search warrants arise in two situations: (1) when facts alleged in the warrant established probable cause when the warrant was issued, "but the government's delay in executing the warrant . . . tainted the search;" and (2) when "the information on which [the search warrant] rested was arguably too old to furnish 'present' probable cause." United States v. McCall, 740 F.2d 1331, 1336 (4th Cir. 1984). Here, the affidavit in support of the search warrant: provided background information about an ongoing investigation into Deguia's involvement in methamphetamine trafficking; described the previous alert on the box containing methamphetamine addressed to Glen Avenue; mentioned the affiant's belief that the packages containing methamphetamine that were addressed to Hanyen Drive were intended for Deguia; stated that Deguia was seen traveling from his home to the house on Hanyen Drive around the time of an attempted delivery of the packages days earlier; and revealed that Lasdulce, a person of interest in the Deguia investigation, had—earlier the day the warrant was requested—placed the boxes of methamphetamine in his pickup truck.

- 5 -

Especially in light of the ongoing nature of the investigation and Lasdulce's having only hours earlier placed the boxes in his truck, the information in the warrant was not stale. The affiant also presented sufficient facts to establish probable cause that contraband or evidence of a crime would be found at the Hanyen Drive house. See Illinois v. Gates, 462 U.S. 213, 238 (1983). We conclude that the district court did not err in denying the motion to suppress. The related argument concerning denial of the motion for a new trial also fails.

III

We next consider Lasdulce's sentence. After United States v. Booker, 543 U.S. 220 (2006), we review a sentence to determine whether it "is within the statutorily prescribed range and . . . reasonable." United States v. Hughes, 401 F.3d 540, 547 (4th Cir. 2005) (citations omitted). In determining reasonableness, "we review legal questions, including the interpretation of the guidelines, de novo, while factual findings are reviewed for clear error." United States v. Moreland, 437 F.3d 424, 433 (4th Cir.), cert. denied, 126 S. Ct. 2054 (2006).

Lasdulce contends that it was error to consider amounts of methamphetamine attributable to his codefendants when calculating his base offense level. His argument fails in light of the guideline directive that, to calculate the guideline range for a coconspirator, "all reasonably foreseeable acts and omissions of

others in furtherance of the jointly undertaken criminal activity, that occurred during the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense" are to be included.  See <u>U.S. Sentencing Guidelines Manual</u> § 1B1.3(a)(1)(B) (2004).

## IV

In accordance with <u>Anders</u>, we have reviewed the entire record for any meritorious issues and have found none. Accordingly, we affirm.[*]  This court requires counsel to inform his client, in writing, of his right to petition the Supreme Court of the United States for further review.  If the client requests that a petition be filed, but counsel believes that such a petition would be frivolous, then counsel may move this court for leave to withdraw from representation.  Counsel's motion must state that a copy of the motion was served on the client.  We dispense with oral argument because the facts and legal contentions are adequately set forth in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

---

[*]In his pro se brief, Lasdulce complains about enhancement of his sentence based on his role in the offense.  The record reflects that there was no such enhancement.